COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Felton and Senior Judge Annunziata[*]
Argued at Alexandria, Virginia


LOUISE REDDITT

                                                    MEMORANDUM OPINION[**] BY
v.        Record Nos. 0770-04-4[1]                  JUDGE WALTER S. FELTON, JR.
                       0771-04-4                         JANUARY 11, 2005
                       0772-04-4
                       0773-04-4

FAIRFAX COUNTY DEPARTMENT OF FAMILY SERVICES


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                         M. Langhorne Keith, Judge

        Louise Redditt, *pro se*.

        (Mark Bodner, Guardian *ad litem*, on briefs), for appellant.

        Cynthia A. Bailey, Assistant County Attorney (David P. Bobzien,
        County Attorney; Peter D. Andreoli, Deputy County Attorney;
        Dennis R. Bates, Senior Assistant County Attorney, on briefs), for
        appellee.

        Mario A. Bezzini, Guardian *ad litem* for the minor children.


    Louise Redditt (appellant) appeals the judgment of the trial court terminating her residual

parental rights to her two daughters pursuant to Code § 16.1-283(C)(1) and (2).  Appellant contends

---

    [*] Judge Annunziata participated in the hearing and decision of this case prior to the
effective date of her retirement on December 31, 2004 and thereafter by her designation as a
senior judge pursuant to Code § 17.1-401.

    [**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

    [1] Record No. 0770-04-4 is the file for the appeal of the trial court's termination of
parental rights to appellant's youngest daughter (DB); Record No. 0771-04-4 is the file for the
appeal of the trial court's approving of the foster care plan for adoption for DB; Record No.
0772-04-4 is the file for the appeal of the trial court's termination of parental rights to her older
daughter (DA); and Record No. 0773-04-4 is the file for the appeal of the trial court's approving
of the foster care plan for adoption for DA.

the trial court erred in (1) denying her motion to dismiss the petitions for termination of parental rights for each child, arguing that the Fairfax County Department of Family Services (DFS) failed to timely file its revised foster care plans prior to filing the petitions for termination; (2) admitting into evidence copies of letters from DFS to appellant; (3) finding that DFS consulted appellant concerning the foster care service plans within the meaning of Code § 16.1-281(A); and (4) finding there was clear and convincing evidence that she failed to substantially remedy the conditions that led to her children's placement in foster care. Finding no error, we affirm the judgment of the trial court.

BACKGROUND

As the parties are familiar with the record, we recite only those facts necessary to the disposition of the issues before the Court.

On appeal, we view the evidence in the light most favorable to the prevailing party below, here DFS, and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence shows that on September 6, 2002, DFS removed appellant's thirteen-year-old daughter (DA) and twelve-year-old daughter (DB) from her care because she left them alone as long as twelve hours a day at a local motel and failed to register them for school.

On October 22, 2002, the juvenile and domestic relations district court (juvenile court) determined that the children were in need of services as defined in Code § 16.1-228. As appellant was unable to provide care for her children and there was no relative available to take custody of them, the children remained in foster care. The juvenile court ordered appellant to cooperate with DFS in developing and executing foster care plans for the children with the goal

of returning the children to appellant's care and custody, and appointed a guardian *ad litem* for the children.

On December 2, 2002, the juvenile court approved the initial foster care plans with the goal to return the children to their mother's care, with the children remaining in DFS custody in the interim. It also ordered appellant to complete a psychological assessment, to obtain safe and stable housing, to secure stable employment, and to continue weekly contact with her children through DFS. Almost a year later, on November 7, 2003, DFS filed with the juvenile court revised foster care plans changing the goal from return home to a goal of adoption. On November 10, 2003, DFS filed a petition with the juvenile court to terminate appellant's residual parental rights to each of the children.

On December 11, 2003, the juvenile court approved the revised foster care plans with the goal of adoption and terminated appellant's residual parental rights to the two children pursuant to Code § 16.1-283(A). Appellant appealed the juvenile court's decisions to the circuit court pursuant to Code § 16.1-296(D).

On March 10, 2004, the circuit court heard the appeals *de novo*. Appellant terminated the services of her court-appointed counsel on the morning of the trial. She appeared *pro se* but, because she was incarcerated pending sentencing in an unrelated matter, the trial court appointed a guardian *ad litem* for her pursuant to Code § 8.01-9. After it heard the evidence, the trial court approved the foster care plans with a goal of adoption and granted DFS's petitions to terminate appellant's residual parental rights to the two children. These appeals followed.

ANALYSIS

A.  Timely Filing of Foster Care Plans

Appellant contends DFS failed to timely file its foster care plans for the children prior to filing its petitions to terminate her parental rights as required by Code § 16.1-283(A).[2]  She argues that, since DFS failed to timely file its foster care plans for adoption for the children, the trial court lacked jurisdiction to conduct the termination of parental rights hearing and that it erred in not dismissing those petitions.  During the trial, DFS presented copies of the foster care plans bearing the November 7, 2003 date stamp of the juvenile court.[3]

Appellant's guardian *ad litem* proffered to the trial court that he had inspected the court files the day prior to trial and did not find the foster care plans in those files.  DFS proffered that Ms. Omatete, the DFS social worker assigned to the case, would testify that she timely filed the plans on November 7, 2003 with the juvenile court.  At trial, the court had before it copies of the foster care plans bearing the November 7, 2003 date stamp of the juvenile court.  Considering the proffers and reviewing the documents and the date stamp thereon, the trial court concluded that the foster care plans had been timely filed in the juvenile court and denied her plea to jurisdiction.  We conclude that it did not err in doing so.

---

[2] Code § 16.1-283(A) provides in pertinent part, that

> [n]o petition seeking termination of residual parental rights shall be accepted by the court prior to the filing of a foster care plan, pursuant to § 16.1-281, which documents termination of residual parental rights as being in the best interests of the child.  The court may hear and adjudicate a petition for termination of parental rights in the same proceeding in which the court has approved a foster care plan which documents that termination is in the best interests of the child.

[3] The record reflects that the petitions to terminate appellant's parental rights to the two children were filed with the juvenile court on November 10, 2003.

- 4 -

Appellant contends for the first time on appeal that the trial court erred in taking judicial notice of the juvenile court's date stamp reflecting the foster care plans were timely filed on November 7, 2003. She never argued to the trial court that it lacked authority to take judicial notice of the records of another court within the same jurisdiction from which an appeal *de novo* was taken to it.

"[A]n appeal from the juvenile court must be heard *de novo* by the circuit court." Fairfax County Dep't of Family Servs. v. D.N., 29 Va. App. 400, 406, 512 S.E.2d 830, 832 (1999) (citations omitted). "'A court which hears a case *de novo* . . . acts not as a court of appeals but as one exercising original jurisdiction.'" Addison v. Salyer, 185 Va. 644, 649, 40 S.E.2d 260, 263 (1946). "Such an appeal transfers the *entire* record to the circuit court for retrial *as though the case had been originally brought there*." Mahoney v. Mahoney, 34 Va. App. 63, 66, 537 S.E.2d 626, 627 (2000) (emphasis in original). We find no error in the trial court's taking judicial notice of records of the juvenile court transferred to it on appeal, including the date stamp on the foster care plans.

There exists in the record before us sufficient evidence from which the trial court could conclude that the foster care plans were timely filed and that it had jurisdiction over the department's petitions for termination. Accordingly, we affirm the judgment of the trial court.

### B. Admission of Official Correspondence into Evidence

Appellant also contends the trial court erred in admitting into evidence copies of letters DFS sent to her relating to the development and execution of the foster care plans, contending that the correspondence was inadmissible hearsay. In response to appellant's objection, DFS asserted the correspondence was admissible under Code § 8.01-390, the official records exception to the hearsay rule. Appellant offered no additional argument as to why the records did not fall within that exception, and the trial court received the evidence.

Here, the challenged documents substantiate the various efforts made by DFS to assist appellant in regaining her children and to keep her advised about her case. They are evidence that DFS communicated with appellant regarding the foster care plans as required by Code § 16.1-281(A).[4] Ms. Omatete testified that the letters offered into evidence were records of the Fairfax County Department of Family Services and that she was custodian of the particular documents. From that testimony, the trial court determined that the records contained facts within her personal knowledge. See Smith v. Woodlawn Constr. Co., 235 Va. 424, 431-32, 368 S.E.2d 699, 704 (1988). No additional foundation was necessary. See Taylor v. Maritime Overseas Corp., 224 Va. 562, 566-67, 299 S.E.2d 340, 342 (1983).

Appellant argues for the first time on appeal that the correspondence was not subject to the official records hearsay exception under Code § 8.01-390 because DFS failed to lay a proper foundation; that the letters contained inadmissible opinion; and that they were prepared, at least in part, for purposes of litigation. At trial, appellant did not identify the specific portions of the documents to which she objected, and failed to raise the objections she now raises for the first time on appeal. Rule 5A:18 bars our consideration of "an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). By failing to bring the specific objections to the trial court's attention, and thereby provide to opposing counsel an opportunity to respond, appellant deprived the trial court of any opportunity to consider whether to exclude the specific evidence. See Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (*en banc*) (citations omitted). Appellant has not asked that we invoke the good cause or ends of justice exception to Rule 5A:18, and our review of the record does not

---

[4] Code § 16.1-281(A) requires that DFS develop a foster care plan for a child in its legal custody, providing a detailed description of the services to be provided and any other support the department will offer to the child and the parent.

disclose any reason to do so. Thus, the matter has not been preserved for appeal, and appellant's argument is procedurally barred. Rule 5A:18.

Accordingly, we find that the trial court did not err in admitting the documents over appellant's objection.

### C. Consultation with Parent on Foster Care Plans

Appellant argues that the trial court erred in concluding that DFS consulted with her concerning matters to be included in the initial foster care plans for the children as required by Code § 16.1-281(A).

Code § 16.1-281(A) provides in part:

> The individual family service plan developed by the family assessment and planning team . . . may be accepted by the court as the foster care plan if it meets the requirements of this section. The representatives of such department, agency, or team shall consult with the child's parent(s) . . . concerning the matters which should be included in such plan.

The record reflects that from "day one," Ms. Omatete talked to appellant about the foster care plans for her children. She testified that she informed appellant "what will be expected [of appellant], . . . [to] insure that the children will get home," and that she discussed the plans "during each and every visit she had." These discussions occurred regularly until appellant's visitation with her children was suspended as a result of her inappropriate behavior during the visits. The trial court had before it copies of the correspondence DFS sent to appellant, communicating its expectations and the goals to be accomplished in order for the children to be returned to her. The record reflects that appellant did not agree with the proposed foster care plans. In particular, appellant objected to the provisions of the foster care plan requiring her to verify that she maintained steady employment and that she had undergone a psychological assessment and evaluation. She refused to comply with the plans even after they were approved by the juvenile court, which had heard her objections.

Code § 16.1-281(A) requires DFS to "consult" with the parent concerning matters to be included in the foster care plan for the return of her children. It does not require DFS to alter the plan to accommodate the demands of the parent. Nor does it require the parent to agree with the plan before the court adopts it. Appellant cannot avoid termination of her residual parental rights by simply refusing to agree with the foster care plans approved by the court.

From the record before us, we conclude the trial court did not err in determining that DFS complied with its statutory obligation to consult with appellant concerning the matters included in the foster care plans for her children.

### D. Termination of Residual Parental Rights

Appellant challenges the sufficiency of the evidence supporting the trial court's decision to terminate her parental rights to her children pursuant to Code § 16.1-283(C)(1) and (2). She contends that the trial court erred in finding that DFS demonstrated that she failed to maintain contact with her children while they were in DFS custody; that she failed to plan for her children's future return; or that she failed to substantially remedy the conditions that led to the children's removal.

In reviewing a trial court's decision terminating parental rights, we presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). The trial court has "broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley, 9 Va. App. at 328, 387 S.E.2d at 795. "[W]hen based on evidence heard *ore tenus*," the trial court's judgment "will not be disturbed on appeal unless plainly wrong or without evidence to support it." Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

Code § 16.1-283(C) provides that a trial court may order termination of residual parental rights:

> [I]f the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> 1. The parent or parents have, without good cause, failed to maintain contact with and to provide or substantially plan for the future of the child for a period of twelve months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship; or
>
> 2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period not to exceed twelve months to remedy substantially the conditions which led to the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Viewed in the light most favorable to DFS, the prevailing party below, we conclude that the trial court did not err in ruling that DFS had shown by clear and convincing evidence that termination of appellant's residual parental rights was in the children's best interests, that appellant failed to remedy her situation, and that her failure was without "good cause." See Martin v. Pittsylvania County Dep't of Social Services, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). The evidence before the trial court showed that appellant failed to comply with the foster care plans to return the children to her. The court-approved plans required her to maintain contact with her children, to secure and maintain steady employment, to secure a safe and stable place to live with her children, and to undergo a psychological evaluation. Appellant's compliance with these obligations was necessary to establish that she was planning for her children's future and that she was substantially remedying the conditions that resulted in the children's placement in foster care.

The record reflects that appellant refused to undergo the court-ordered psychological evaluation, or to even schedule an appointment to do so, despite DFS's efforts to locate three psychologists outside of Fairfax County at appellant's request. When appellant further demanded a minority psychologist, DFS made arrangements for appellant to be evaluated by a Washington D.C. psychologist, meeting that request. Appellant spoke with the psychologist only by telephone, but never made an appointment to undergo the required psychological assessment and evaluation.

Additionally, appellant failed to provide verification that she secured and maintained stable full-time employment. She refused to provide DFS pertinent information about any employment. Although she told DFS that she worked for Kelly Temporary Services, she refused to provide any written verification of when and where she was employed. When asked for more information about her employment, she told the foster care worker that "it was none of [her] business where [appellant] was working."

Appellant also failed to obtain safe and stable housing. The record reflects that from September 2002 to March 2003, she maintained no consistent address. In March 2003, appellant rented two rooms from Joyce Wright, a casual acquaintance she met after the children were in foster care. Ms. Wright offered to assist her in getting her children back. A home study by DFS found the residence to be appropriate for appellant and the children. However, Ms. Wright sought a court order to evict appellant from the condominium in October 2003 after she refused her request to vacate. Ms. Wright testified that appellant became verbally abusive and was drinking heavily. She also testified that appellant borrowed her car and had been involved in an accident while drinking, and as a result, Ms. Wright had to bail her out of jail. The record additionally reflects that appellant had not paid any rent to Ms. Wright and did not contribute to

household expenses. Ms. Wright testified that she incurred substantial bills and expenses as a result of appellant's living with her.

The record also reflects that appellant failed to maintain regular contact with her children after July 9, 2003. On that date, she was verbally and emotionally abusive to her children, as she had been on prior visits, and was especially so during the July 9, 2003 visit. On that date, appellant was also verbally abusive towards the DFS caseworkers and was derisive of the children's foster mother, all of which occurred in the children's presence. After that visit, DFS suspended appellant's further visitation and advised her by letter that before visitation could resume, it would be necessary for her to schedule an appointment with DFS staff to address the continuing visitation problems. Thereafter, appellant failed to schedule an appointment and failed to otherwise meet with DFS to resolve the problems that led to the suspension of visitation with her children.

At trial, the children's therapist opined that their return to appellant would not be in the children's best interests. She testified that the oldest child found appellant's visits "horrifying" and "sickening." She also reported that the behavior of the youngest child "really regressed" following the difficult visits, especially following that of July 9, 2003. She noted that after the juvenile court approved the foster care plans goal of adoption and entered its orders of termination of parental rights, the children's anxiety levels decreased dramatically. She advised the trial court that in her opinion a return of the children to appellant would be traumatic to the older child and would put the younger child at risk of a "complete emotional shut down, depression, and an inability to function within the community because of her need for a consistent and stable environment."

The children's guardian *ad litem* also told the trial court that he believed returning the children to their mother was not in the children's best interest and that termination of appellant's residual parental rights would be in the children's best interest.

After reviewing the record before us, we conclude that the trial court did not err in ruling that DFS proved by clear and convincing evidence each of the requirements of Code § 16.1-283(C)(1) and (2), that appellant failed to substantially remedy the conditions which resulted in her children being placed in foster care, and that termination of appellant's residual parental rights was in the children's best interests.

For the above reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>