COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Decker and Senior Judge Coleman

ANGELA M. GREGORY

v.     Record No. 0431-14-3

PAMELA S. MARTIN

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 16, 2014

FROM THE CIRCUIT COURT OF PULASKI COUNTY
Colin R. Gibb, Judge

(R. Christopher Munique; Lacy, Campbell & Munique, P.C., on
brief), for appellant. Appellant submitting on brief.

No brief for appellee.[1]

Angela Gregory (mother) is appealing an order that denied her visitation with her child

and granted the petition of Pamela Martin (aunt) for leave to file for adoption of the child.

Mother argues that the trial court erred by: (1) "failing to allow a *de novo* trial" and denying her

motion for visitation without allowing her to present all of her evidence at trial and granting the

aunt's petition even though the aunt presented no evidence in support of her petition;

(2) violating mother's due process rights by denying her motion for visitation without allowing

her to finish presenting her evidence; (3) violating mother's due process rights by granting the

aunt's petition for leave to proceed with proposed adoption without requiring the aunt to present

any evidence in support of her petition; (4) not following the first guardian *ad litem*'s (GAL)

recommendation "to grant [mother's] Motion to Amend Visitation and deny [aunt's] Petition for

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] R. Cord Hall, guardian *ad litem* for the minor child, submitted a letter stating that he
supported the appellee's arguments made in the trial court.

Leave to Proceed with Proposed Adoption;" (5) allowing twenty-two months to pass between trial dates; (6) making the following factual determinations because there was no evidence presented at trial to substantiate the determinations: a) "Pamela S. Martin has been an integral part of [the child's] life since shortly after birth and has for several years provided her with a suitable, loving, and stable home" and b) the child "considers her [the aunt] to be and refers to her as her mother, is doing very well in school, and has had very little contact with her biological mother;" and (7) ruling that mother's consent to the adoption was being withheld contrary to the child's best interests because no evidence was presented with respect to the aunt's petition for leave to proceed with the proposed adoption. Upon reviewing the record and opening brief, we reverse and remand this case to the trial court for further proceedings consistent with this opinion.

BACKGROUND

The child was born in February 2005. She initially lived with mother; however, mother lost her apartment in the spring of 2006, so the child went to live with the paternal grandparents. Mother would visit the child at her parents' house. Both mother and father had substance abuse problems.

In 2009, mother was convicted of grand larceny, breaking and entering, and grand larceny with the intent to sell. Mother was incarcerated from April 2009 until February 22, 2011. While incarcerated, mother took several classes and participated in the Therapeutic Community Program.

On October 21, 2010, the Pulaski County Juvenile and Domestic Relations District Court (the JDR court) awarded custody of the child to the aunt and held that mother would have no visitation. In January 2011, the aunt filed a petition for consent to proposed adoption. The child's father gave his consent for the aunt, who is his sister, to adopt the child. In February

2011, mother filed a motion to amend visitation. On May 9, 2011, the JDR court denied mother's motion for visitation and held that her consent to the adoption was withheld contrary to the child's best interests. The JDR court granted leave to the aunt to file for adoption. Mother appealed the JDR court rulings.

On the morning of September 16, 2011, a hearing was held in the Pulaski County Circuit Court before the Honorable Colin R. Gibb. The trial court stated that it would hear evidence regarding mother's motion to amend visitation first because the ruling in that matter could affect the aunt's petition for adoption. Mother started to present her case. Both of her parents testified, and then mother testified. Mother testified that she was living with her parents, and she was employed full time. She was cooperative with her probation officer and passed all of her drug screens. During the cross-examination of mother, Judge Gibb stated that he needed to suspend the hearing because he had to hear another case that afternoon in Montgomery County Circuit Court. Mother had not completed her evidence. The trial court stated that mother "had been incarcerated too long and that she had not had enough recent contact with [the child]." The court further stated that mother, if she wished to do so, could finish presenting her case at another time. The child's GAL requested that the trial court grant mother visitation with the child on a trial basis. The trial court denied the GAL's request. The GAL then asked the court to consider supervised visitation, but the trial court again denied the motion. Another hearing was not scheduled.

On October 19, 2011, the aunt's attorney sent a letter to the trial court to inquire about the status of the case. The GAL followed up with a letter to the court and again asked that mother be granted visitation with the child. The GAL also stated that a full hearing was necessary to present all of the evidence. The aunt's attorney responded to the GAL's letter and stated that a

full hearing was not necessary because the aunt would testify next and "it's only going to get worse for the mother." The trial court did not respond to these letters.

On January 10, 2012, the aunt's attorney again wrote the court to inquire about the status of the case. On January 16, 2012, mother's attorney wrote to the trial court and asked that it follow the GAL's suggestion regarding visitation or let them finish presenting their evidence.

On October 16, 2012, the trial court had a telephone conference with the lawyers. A new GAL had to be appointed because the previous GAL was now an assistant Commonwealth's attorney. On November 29, 2012, the trial court entered an order appointing a new GAL for the child.

On July 23, 2013, the parties, their counsel, and the GAL appeared before the trial court. At the court's request, the GAL offered his recommendations at the beginning of the hearing. He stated that mother was doing well. She was employed and had passed all of her drug screens. However, she had not seen the child in four years. Meanwhile, the child was doing well in the aunt's home and had bonded with her. The GAL recommended that the trial court allow the adoption to move forward, as it was in the child's best interests. Before hearing any additional evidence, the trial court stated that despite mother's progress, the child needed permanency. The trial court found that it was in the child's best interests to be adopted by the aunt. The court further stated that it was going to deny mother's motion for visitation, but it would allow mother to take the stand and offer additional information. Mother testified that she was working full time. She moved into a new home and expected to be released from probation soon due to her good behavior. She asked the court to allow her to have visitation with her child. Her counsel asked the court to follow the recommendations of the first GAL with respect to visitation. The trial court denied mother's request for visitation and granted the aunt's petition for leave to proceed with the adoption. This appeal followed, in which the parties waived oral argument.

ANALYSIS

*De Novo trial*

Mother argues that the trial court erred by not conducting a *de novo* trial before it denied her motion for visitation and granted the aunt's petition regarding adoption. The trial commenced on September 6, 2011. The judge suspended the hearing before mother could finish presenting her evidence because he had to be in a circuit court in another county. The judge would not grant the GAL's request to allow mother to have visitation with the child because he thought mother had been incarcerated too long and had not recently seen her child. Despite requests from counsel, the next hearing was not scheduled until July 23, 2013, almost two years later. The trial court heard from the GAL and announced its ruling prior to mother presenting all of her evidence. The aunt presented no evidence with respect to her petition.

We hold that the trial court erred in denying mother's motion for visitation and granting the aunt's petition without hearing all of the evidence.

"A party appealing to a circuit court has the right to a *de novo* trial on appeal from 'any final order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction.'" Alexander v. Flowers, 51 Va. App. 404, 413, 658 S.E.2d 355, 359 (2008) (quoting Code § 16.1-296). "'A *de novo* hearing means a trial anew, with the burden of proof remaining upon the party with whom it rested in the juvenile court.'" Parish v. Spaulding, 20 Va. App. 130, 132, 455 S.E.2d 728, 729 (1995) (quoting Box v. Talley, 1 Va. App. 289, 292, 338 S.E.2d 349, 351 (1986)). At a *de novo* hearing, "[t]he circuit court must consider all relevant evidence, even if such evidence had not been considered by the juvenile court." Fairfax County Dep't of Family Servs. v. D.N., 29 Va. App. 400, 406, 512 S.E.2d 830, 832 (1999) (citation omitted).

> We have held that "[a] custody determination must be based on the
> child's best interests under the circumstances *prevailing at the time*

- 5 -

*of the decision*." Wilson v. Wilson, 12 Va. App. 1251, 1255, 408 S.E.2d 576, 579 (1991) (emphasis added). This holding applies equally to an initial custody determination as well as to a trial *de novo*. A trial court is required to consider any relevant evidence developed prior to the hearing date that may impact on the child's best interests.

Parish, 20 Va. App. at 132-33, 455 S.E.2d at 729.

The circuit court did not conduct a *de novo* trial. Mother did not present all of her evidence, and the aunt presented no evidence. Despite this lack of evidence, the trial court concluded that mother had not had any recent contact with the child and she had been incarcerated "too long." The circuit court allowed twenty-two months to pass between the hearings and did not hear any additional evidence from mother before announcing how it intended to rule. Accordingly, the trial court erred by not conducting a *de novo* trial.

*Due process rights*

Mother claims her due process rights were violated when the trial court decided the case without hearing all of mother's evidence and no evidence from the aunt.

It is well established that when granting a petition for adoption over a birth parent's objection, there must be more than a finding that the adoption would promote the child's best interests. Malpass v. Morgan, 213 Va. 393, 397-99, 192 S.E.2d 794, 797-98 (1972). This is due to the fact that

> the relationship between a parent and child is constitutionally protected by the Due Process Clause of the Fourteenth Amendment. Quilloin v. Walcott, 434 U.S. 246, 255 (1978). "The liberty interest at issue in this case — the interest of parents in the care, custody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65 (2000).

Copeland v. Todd, 282 Va. 183, 198, 715 S.E.2d 11, 19 (2011).

"When, as here, the biological parent protests the adoption, the involuntary termination of her parental rights makes these safeguards all the more critical." Id. "Virginia's statutory

scheme for adoption, including Code §§ 63.2-1205 and -1208, defines the best interests of the child in terms that require more expansive analysis than when the contest is between two biological parents." Id. at 199, 715 S.E.2d at 20.

Code §§ 63.2-1205 and -1208 include numerous factors that a trial court needs to consider before determining whether an adoption is in the child's best interests. These "adoption statutes meet constitutional due process scrutiny because they encompass far more than mere consideration of the child's best interests as defined in cases involving a contest between natural parents." Copeland, 282 Va. at 200, 715 S.E.2d at 20.

In this case, the trial court did not hear any evidence and did not make any findings regarding Code §§ 63.2-1205 and -1208. The court concluded that mother was withholding her consent to the adoption contrary to the best interests of the child; however, no evidence was presented in support of the adoption petition. Without any evidence, the trial court erred in making such conclusions.

Furthermore, Code § 20-124.3 states that a trial court "shall consider" certain factors enumerated in the code section prior to deciding visitation. There is no indication in the record that the trial court considered any of the Code § 20-124.3 factors prior to denying mother's motion for visitation.

Therefore, the trial court denied mother's due process rights by denying her motion for visitation and granting the aunt's petition for leave to file for adoption.

CONCLUSION

For the reasons discussed above, we reverse and remand for further proceedings

consistent with this opinion.[2]

Reversed and remanded.

---

[2] Considering our holding that the trial court erred by not conducting a *de novo* hearing and violating mother's due process rights, the Court does not need to address the other assignments of error.  See Kilby v. Culpeper Cnty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1, 684 S.E.2d 219, 220 n.1 (2009) ("an appellate court decides cases on the best and narrowest ground available" (internal quotations and citations omitted)).